**Tanya LIBBY, by her father and next friend, Charles F. LIBBY, Plaintiff,**

**v.**

**The SOUTH INTER–CONFERENCE ASSOCIATION, The Illinois High School Association, Valley View School District No. 365U, David Carlson as Principal of Romeoville High School, and Ernie Cimo, as Athletic Director of Romeoville High School, Defendants.**

**No. 87 C 7499.**

United States District Court, N.D. Illinois, E.D.

Jan. 2, 1990.

Timothy A. Nelsen, Christina M. Tchen, Colleen K. Connell, Roger Baldwin Foundation of ACLU, Inc., Susan R. Monkmeyer, Sheribel F. Rothenberg, Julie L. Biehl, D'Ancona & Pflaum, Chicago, Ill., for plaintiff.

Wayne F. Plaza, Charles A. LeMoine, Rooks, Pitts & Poust, Chicago, Ill., David J. Bressler, Rooks, Pitts & Poust, Wheaton, Ill., for Ill. High School Ass'n.

Barry L. Moss, George H. Klumpner, Moss & Bloomberg, Stuart D. Gordon, Bolingbrook, Ill., for Valley View High School Dist. No. 365U, David Carlson and Ernie Cimo.

James P. Bartley, Terrence M. Barnicle, Klein, Thorpe & Jenkins, Chicago, Ill., for South Inter–Conference Ass'n.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff Tanya Libby, a student at defendant Romeoville High School ("Romeoville"), brought this lawsuit on August 26, 1987, challenging her inability to play interscholastic soccer. After the entry of a series of temporary restraining orders in Libby's favor, the case was dismissed as moot on December 20, 1988. Pending is Libby's petition for attorneys' fees and costs pursuant to 42 U.S.C. § 1988. For the reasons described below, Libby's petition is denied.

### II. FACTS

At the time this lawsuit was filed, there was no girls' soccer team at Romeoville. According to Romeoville, this was due to a lack of interest on the part of its female students. The majority of interscholastic games in which the Romeoville boys' soccer team participated were sponsored by defendant South Inter–Conference Association ("SICA"), whose rules prohibited girls from playing in games between boys' teams. Similarly, the post-season Boys State Soccer Tournament was sponsored by defendant Illinois High School Association ("IHSA"), whose rules also prohibit girls from playing in boys' competitions. Accordingly, although Romeoville was willing to allow Libby to play soccer on its boys' team, Libby was precluded from playing soccer in most of the regular season, and all of the post-season, competitions in which the Romeoville boys' team was scheduled to participate. Libby was thus effectively unable to play high school soccer because of the combination of the lack of a girls' soccer team at Romeoville and the SICA and IHSA rules.

On August 26, 1987, shortly before the boys' soccer season began, Libby filed this action for declaratory and injunctive relief. She named as defendants SICA, IHSA, Romeoville, Valley View School District No. 365U (in which Romeoville is located), and two officials of Romeoville. Her complaint was based on the First and Fourteenth Amendments to the United States Constitution, Article I § 8 of the Illinois Constitution, and the Illinois School Code.

The Court referred Libby's request for provisional injunctive relief to Magistrate Bucklo for a report and recommendation. Romeoville did not oppose the entry of a temporary restraining order ("TRO"). (In fact, throughout the litigation, Romeoville has not opposed relief and has been aligned with the plaintiff for many purposes.) On September 1, 1987, the Magistrate recommended that a TRO be entered against all defendants other than IHSA. She stated that a TRO against IHSA would be premature because the IHSA tournament did not begin until October 24, 1987. Judge Marshall, acting as emergency judge in this Court's absence, entered a TRO on the same date against all defendants other than IHSA. On September 10, 1987, this Court entered an agreed extension of the TRO.

On September 22, 1987, a preliminary injunction hearing commenced before the Magistrate. In the meantime, the parties had engaged in substantial discovery. The hearing continued on September 23, 24 and 25. A settlement was then reached with SICA, which was dismissed from the case. On October 23, 1987, the Magistrate issued a report and recommendation that Libby's motion for a preliminary injunction be granted. However, the IHSA tournament was due to begin the following day, and allowance of the ten-day periods for objections and responses would preclude effective relief. Plaintiff therefore moved for another TRO, and on October 23, this Court entered a TRO against IHSA requiring it to allow Libby to participate in the IHSA tournament as a member of the Romeoville boys' team. On October 24, the Romeoville team lost in the first round of the tournament. The motion for a preliminary injunction thus became moot.

Romeoville subsequently determined that there was sufficient interest to field a girls' soccer team, and the following year Libby played soccer on the Romeoville girls' team. On December 20, 1988, the Court dismissed Libby's complaint as moot. IHSA has appealed that dismissal to the Court of Appeals for the Seventh Circuit. Libby now seeks to recover her attorneys' fees from IHSA.

## III. STATE ACTION

■ IHSA's first argument in response to Libby's fee request is that IHSA's conduct is not state action. To begin with, it is not clear that the Court should reach that issue at this stage of the case. Whether IHSA is a state actor is an issue that goes to the merits of the case. IHSA is essentially arguing that if Libby was a prevailing party, she prevailed wrongfully. In determining the appropriateness of attorneys' fees under § 1988, the Court knows of no authority which supports the idea that it should ask not only whether the plaintiff prevailed but also whether the plaintiff prevailed correctly. A fee petition is not the appropriate time for arguing that a case was decided wrongfully on the merits.

■ In any event, IHSA clearly is a state actor. Many similar athletic associations have been held to be state actors. *See, e.g., Clark v. Arizona Interscholastic Ass'n,* 695 F.2d 1126, 1128 (9th Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983); *Yellow Springs Bd. of Educ. v. Ohio High School Athletic Ass'n,* 647 F.2d 651, 653 (6th Cir.1981); *Brenden v. Independent School Dist. 742,* 477 F.2d 1292, 1295 (8th Cir.1973); *Mitchell v. Louisiana High School Ass'n,* 430 F.2d 1155, 1157 (5th Cir.1970); *Louisiana High School Athletic Ass'n v. St. Augustine High School,* 396 F.2d 224 (5th Cir.1968). Even IHSA itself has until recently agreed that it was a state actor:

As a preliminary matter, we note that the presence of state action is not in dispute in this case. Public schools make

up 85% of the IHSA's membership, and although the IHSA is a purely voluntary association, the overwhelmingly public character of the IHSA membership is sufficient to confer state action for the purposes of § 1983. *See In re United States ex rel. Missouri State High School Activities Ass'n*, 682 F.2d 147, 151 (8th Cir.1982); *Walsh v. Louisiana High School Athletic Ass'n*, 616 F.2d 152, 156 (5th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *see also Menora v. Illinois High School Ass'n*, 683 F.2d 1030, 1032 (7th Cir.1982), *cert. denied*, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983) (assuming, without deciding the question, that the IHSA is an arm of the state for Fourteenth Amendment purposes).

*Griffin High School v. IHSA*, 822 F.2d 671, 674 (7th Cir.1987).

IHSA's argument here that it is not a state actor is premised on *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), in which the Supreme Court held that the NCAA is not a state actor. IHSA enumerates several ways in which it is similar to the NCAA, including voluntary membership, membership by both public and private schools, the absence of any delegation of any disciplinary power by member schools to IHSA, and the absence of governmental powers. Despite these similarities, there are important differences as well—most significantly, that the IHSA is composed entirely of schools within the State of Illinois, many of which are Illinois public schools. The Supreme Court itself found this distinction to be determinative in *Tarkanian*, where the Court cited *Clark, supra*, and *Louisiana High School Athletic Ass'n, supra*, with approval and stated that the situation would be different in such a case. 109 S.Ct. at 462 n. 13. In accord with the Supreme Court's view, this Court will follow this line of cases and hold that IHSA is a state actor.

## IV. PREVAILING PARTY

■ IHSA's second argument is that plaintiff is not entitled to an award of attorneys' fees because she is not a prevailing party. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). " 'Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail.' Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988 the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Independent School Dist.*, —— U.S. ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989), quoting *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987).

Although these principles may seem straightforward in theory, they are not always easy to apply, and cases where no permanent judicial relief is obtained before they are rendered moot present a particularly difficult context for their application. In *Bonnes v. Long*, 651 F.2d 214, 217 (4th Cir.1981), *cert. denied*, 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982), the court focused on the causal relationship between the lawsuit and the outcome, holding that the court must determine:

> the precise legal/factual condition that the fee claimant has sought to change or affect so as to gain a benefit or be relieved of a burden. With this condition taken as a benchmark, inquiry may turn to whether as a quite practical matter the outcome ... is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.

651 F.2d at 217. In *Nadeau, supra*, the court held that *Bonnes* stated only one half of a two-part test:

> Even if plaintiffs can establish that their suit was causally related to the defen-

dants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.

581 F.2d at 281. In his dissent from the denial of a writ of certiorari in *Bonnes,* Justice Rehnquist (joined by Justice O'Connor) expressed the view that *Nadeau* stated the proper test. 455 U.S. at 966–967, 102 S.Ct. at 1479.

Thus a split over whether—and to what extent—the plaintiff must establish a legal basis for the received relief has appeared in those cases which have found it necessary to determine whether provisional relief obtained before the case became moot sufficed to make the plaintiff a prevailing party. Some such cases have focused merely on the question of whether the lawsuit caused the relief which the plaintiff sought. For instance, in *Fitzharris v. Wolff,* 702 F.2d 836 (9th Cir.1983), a prisoner filed suit to prohibit his transfer to another prison, contending that a transfer would endanger his life. The district court issued a TRO prohibiting the transfer. That order remained in effect until the prisoner was paroled, rendering the case moot. The court of appeals found that the prisoner was a prevailing party because there was a causal relationship between the litigation and the outcome and because the "claim for relief contained a substantial basis in law for the result that he sought." 702 F.2d at 838.[1] In response to the argument that the TRO was not a determination on the merits, the court merely pointed out that the TRO served the same function, in that particular case, as a preliminary injunction. *Id.* at 839.

Similarly, in *Doe v. Marshall,* 622 F.2d 118 (5th Cir.1980), *cert. denied,* 451 U.S.

993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981), a high school student filed suit to obtain injunctive relief allowing him to play football. The district court granted a temporary injunction allowing the student to play. During the pendency of the appeal from that injunction, the student graduated and the case became moot. The court found that an award of attorneys' fees was not precluded, holding that "[a]ll that is required [to be a prevailing party] is that the plaintiff obtain the primary relief sought." 622 F.2d at 120.

Other courts have held that a plaintiff is a prevailing party only if the provisional relief entailed a finding that the plaintiff had established a legal entitlement to relief. For example, in *Coalition For Basic Human Needs v. King,* 691 F.2d 597 (1st Cir.1982), the plaintiffs brought suit to compel state officials to resume certain welfare payments. The district court denied the plaintiffs' motion for a TRO, and the court of appeals issued an injunction pending appeal requiring the resumption of payments. Before the injunction took effect, the state legislature passed a budget which mooted the controversy. The plaintiffs then sought attorneys' fees in connection with the appeal. Drawing on the Supreme Court's statement in *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980), that an interlocutory fee award is allowed "only to a party who has established his entitlement to some relief on the merits of his claims," the court focused on whether the plaintiff had established a legal "entitlement." 691 F.2d at 600. It answered this question in the affirmative, noting that the plaintiffs' goal was provisional relief and that the court of appeals had been aware at the time that its decision on the injunction pending appeal was a final decision for all practical purposes. *Id.* at 601. The court distinguished other cases in which plaintiffs who had obtained provisional relief were held not to be prevailing parties:

---

[1]. The court stated that it need not choose between the *Bonnes* test and the *Nadeau* test because both tests were satisfied. However, in finding the second part of the *Nadeau* test to be met the court found only that the alleged facts stated a claim, without making any inquiry into whether those facts were true. Thus the court made no finding that the prisoner was in fact entitled to relief.

In all these 'denial' cases, the 'interlocutory' victory is far more distant from substantive relief on the merits than in the case before us. In some of them, the interlocutory 'victory' was purely procedural rather than substantive; in others the preliminary relief, although substantive, did not determine the merits of the plaintiffs' claim and provide affirmative relief, but only maintained the status quo without purporting to address the merits; in still others, further litigation on the merits remained to be conducted or had been conducted to the ultimate detriment of the plaintiffs.

*Id.*

In *Laurenzo v. Mississippi High School Activities Ass'n,* 708 F.2d 1038 (5th Cir. 1983), a high school student challenged a rule which made him ineligible to play baseball. The trial court denied the plaintiff's request for a TRO and dismissed the complaint. The court of appeals granted the plaintiff an injunction pending appeal. The appeal became moot when the student graduated. The court stated that to be a prevailing party absent a final judgment,

> a party must have established his entitlement to some relief on the *merits of his claims,* either in the trial court or on appeal '[f]or only in that event has there been a determination of the "substantial rights of the parties," which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.' *Hanrahan,* 446 U.S. at 757–58, 100 S.Ct. at 1989.

708 F.2d at 1041 (emphasis in original). The court found that the student was not a prevailing party because "a finding that [he] would likely succeed on the merits was not required for the issuance of an injunction pending appeal by this court and therefore cannot be inferred by the emergency panel's action." 708 F.2d at 1043.

In *Bly v. McLeod,* 605 F.2d 134 (4th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980), the plaintiffs challenged their inability to vote by absentee ballot. They obtained a TRO in the district court which allowed them to vote. The case was subsequently mooted by an amendment passed by the state legislature. The court of appeals held that the plaintiffs were not prevailing parties:

> The granting of a temporary restraining order in the situation presented here was in no way a determination on the merits and merely preserved the status quo when the plaintiffs might be irreparably harmed if temporary relief were not granted.... [T]he granting of the temporary restraining order hardly can be said to constitute generally prevailing on the merits. No adjudication of the validity of the statute was made.

605 F.2d at 137.

In *Paragould Music Co. v. City of Paragould,* 738 F.2d 973 (8th Cir.1984), the owners of a video arcade brought suit alleging that its patrons were being harassed and illegally arrested and detained. The district court granted a TRO in the plaintiff's favor. The arcade subsequently closed, rendering the case moot. The court stated that in order to be a prevailing party, the plaintiff must succeed in his claims on the merits. 738 F.2d at 975. The court found that the plaintiff had not done so, "[b]ecause the grant of the TRO in this case neither involved a determination of the merits of the underlying action nor acted as a catalyst to obtain concessions from appellees but merely preserved the status quo." *Id.*

 The Court agrees with *Coalition, Laurenzo, Bly,* and *Paragould* that a plaintiff who obtains provisional relief thereby becomes a prevailing party only if that relief was a determination on the merits. In order to make this determination in a particular case, it is necessary to examine the type of relief granted and, in some instances, the court's rationale in granting the relief.

In this case, the relief obtained by Libby was a TRO. Although courts generally examine the plaintiff's likelihood of success on the merits when considering whether to grant a TRO, the actual standard varies. *See, e.g., James v. Edwards,* 683 F.Supp. 157, 159 (E.D.La.1987) (plaintiff must es-

tablish "a substantial likelihood of success on the merits of his claim"); *Ecologix, Inc. v. Fansteel, Inc.*, 676 F.Supp. 1374, 1378 (N.D.Ill.1988) (Alesia, J.) (plaintiff must establish "a reasonable likelihood of success on the merits"); *U.S. v. Phillips*, 527 F.Supp. 1340, 1343 (N.D.Ill.1981) (Aspen, J.) (plaintiff must establish "a probability of ultimate success on the merits"). This variance in the standard is sensible in light of the nature of the relief:

> The issuance of a temporary restraining order is a matter that lies within the discretion of the district court. There are several factors in addition to irreparable injury that usually are considered by the court in exercising this discretion. For example, several cases indicate that the complainant must demonstrate at least a reasonable probability of prevailing on the merits. However, the necessary persuasiveness of this showing varies and often may depend upon the facts in a particular case. Not surprisingly, therefore, when the injury that allegedly will result if the restraining order is denied is very grave, less of a showing by the applicant is required than if the injury would be slight.

11 Wright & Miller, Federal Practice and Procedure: Civil § 2951 at 507–09 (1973). *Cf. Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 387 (7th Cir.1984) (for preliminary injunction, plaintiff must show "some likelihood of success," but the degree of likelihood that must be shown varies along with the nature of the harm).

■ Because of the varying degrees to which a likelihood of success on the merits must be shown in order to obtain a TRO, the fact that Libby was granted a TRO does not, in itself, establish that the Court found that Libby was entitled to relief on the merits. The Court must therefore go further and consider its rationale in granting the TRO. Although such a retrospective inquiry into the Court's rationale is not

without problems, it is essential in this context.[2]

On September 1, 1987, the Magistrate issued her report and recommendation ("Report") that a TRO be granted in Libby's favor. Although she found that a TRO against IHSA would be premature, she included IHSA in her discussion of the merits of Libby's claim. The Magistrate stated that in order to be entitled to a TRO, Libby must "show some likelihood of success on the merits." (Report at 5.) She first noted that if Romeoville had a girls' soccer team, Libby would have no claim under the equal protection clause. She then framed the issue as "whether, because there is insufficient interest among girls at Romeoville High School to start a girls' soccer team, equal protection requires that SICA and IHSA make an exception in their rules to allow plaintiff to play. I think there is a reasonable likelihood that plaintiff will prevail in her argument that they must." (Report at 6.) After describing the tests applied by the Supreme Court to determine the validity of sex-based classifications, the Magistrate stated:

> Despite the burden placed on defendants by these holdings, defendants' sole justification for excluding plaintiff from participation with the Romeoville High School boys' soccer team against other SICA and IHSA teams is that the rules, in general, are intended to foster, not exclude, girls' athletic participation. However, the rules can have that effect only if a school has two teams, one for each sex, and a school obviously cannot have gender separate soccer teams unless at least 11 people of each sex agree to participate. Since it appears that plaintiff is likely to be able to show that fewer than this number of girls wish to play soccer at Romeoville High School, there is a reasonable likelihood that plaintiff will be able to demonstrate that the SICA and IHSA rules, as applied to

**2.** Despite this necessity, the Court is not entirely comfortable with basing the entitlement to attorney's fees on a retrospective determination of the Court's rationale. It should be emphasized that in making this determination, the Court will not engage in an inquiry into its subjective intent at the time the provisional relief was granted but rather will look only to objective indications of the Court's rationale which appear in the record, such as oral and written findings made at the time.

her situation[,] do not substantially achieve the stated objective of fostering maximum participation by girls in competitive sports.

(Report at 7–8.) The Magistrate thus found that "plaintiff has demonstrated a reasonable likelihood of prevailing on the merits." (Report at 9.)

Judge Marshall entered a TRO in favor of Libby on the same day that the Magistrate issued the Report. He did so in a one-page order that does not discuss his rationale.

On October 23, 1987, after having the benefit of evidence presented during hearings on Libby's motion for a preliminary injunction, the Magistrate issued a second report and recommendation ("2d Report"). Before reaching the constitutional issue, the Magistrate discussed the level of interest in soccer expressed by girls at Romeoville in a survey conducted following the hearing. The survey indicated that there was apparently enough interest to field not just one, but two girls' soccer teams. (2d Report at 5–6.) The Magistrate then noted evidence which showed that girls are more likely to participate in, and excel at, most sports where there are separate teams for girls, but that it is more beneficial for girls to play on boys' teams than not to play at all. (2d Report at 7.) She also stated that there was "substantial testimony at the hearing, some from women who are experts on maximizing womens' and girls' participation in sports, that separate teams for the sexes is in the long run the only way to achieve the goal of equal opportunities for girls to participate in sports." (2d Report at 10.)

In addressing the merits of Libby's claim, the Magistrate began by phrasing the standard as a showing of "some likelihood of success on the merits," quoting *Roland, supra,* 749 F.2d at 386–88. (2d Report at 9.) She then noted that "Libby does not dispute that there exists a compelling state interest in separate tournaments for girls and boys of high school age. Thus, if a girl and a boy each have the opportunity to play soccer, on separate teams, Libby concedes that the require-

ments of equal protection are satisfied." (2d Report at 10.) However, Libby argued that where there was insufficient interest to form a girls' team, IHSA was required to allow a girl to play on the boys' team. (2d Report at 10–11.) IHSA argued that the dispute was moot because the survey had demonstrated that there actually was sufficient interest in girls' soccer and that Libby could force Romeoville to form a girls' team. The Magistrate stated that Libby may well have a claim against Romeoville under state law, citing the Illinois Board of Education Sex Equity Rules. However, because Romeoville did not have a girls' team at that time, the Magistrate found that the dispute was not moot. (2d Report at 11–12.) The Magistrate then went on to state:

[A]s IHSA's rules and tournaments stand now, Libby will not be able to play in any tournament unless she plays in the boys' tournament. The exclusion is solely on the ground of sex. IHSA has not shown any justification for not allowing a girl to play when the failure to do so will deprive her of the opportunity to play simply because of her sex....

In summary, I think there is some likelihood that Libby will prevail on her argument that IHSA's separate tournaments violate Libby's rights under the equal protection clause.

(2d Report at 14–15.) The Magistrate thus recommended the issuance of a preliminary injunction.

As noted above (*supra* at 3), because the IHSA tournament was scheduled to begin before the objections to the Magistrate's October 23 report could be briefed, Libby moved for another TRO. This Court held a hearing on that motion on the evening of October 23. Shortly after the beginning of the hearing, the Court stated:

Let me make something very clear and that is that the Magistrate's report and recommendation is not before me. I am not ruling on it tonight.... I am not ruling on the preliminary injunction tonight.... [W]hat I agreed to hear tonight was the motion for temporary restraining order.

(Transcript at 7.) The Court reaffirmed this position throughout the hearing. The hearing consisted of extensive argument by counsel concerning all of the factors to be considered, including the likelihood of success on the merits. After a recess, the Court returned with its ruling and stated:

> I want to make it very clear as, of course, the attorneys who are here are aware, that I am not ruling tonight that the Illinois State High School Association has violated the Constitution. All I have before me is a motion for a temporary restraining order. And I am going to enter the temporary restraining order.

(Transcript at 48.) The Court then read into the record a written order which found that the requirements for entry of a TRO had been met. The order stated that Libby "would be irreparably harmed by application of the IHSA rule," that Libby had "some likelihood of success on the merits of her claim that the IHSA rule is an impermissible sex-based classification in violation of the Fourteenth Amendment to the United States Constitution," and that "the issuance of a temporary restraining order ... will not cause the defendant IHSA any undue injury and any possible injury is far outweighed by the irreparable injury plaintiff will suffer if the IHSA rule is enforced."

In the context of the two opinions by the Magistrate, the order issued by Judge Marshall, and the order issued by this Court, it must be determined whether the provisional relief obtained by Libby against IHSA was granted upon a determination that Libby was entitled to relief on the merits. On behalf of IHSA, it may be argued that the Magistrate only found "some likelihood" that Libby would succeed on the merits. These words indicate that she—and thus the Courts which followed her recommendations—did not find that Libby had established a legal entitlement to relief, but merely that Libby had presented a sufficient legal claim to justify provisional relief in light of the irreparable harm she would suffer if she were not allowed to play.

Furthermore, Libby's legal argument was based on the incorrect assumption that there was insufficient interest at Romeoville to form a girls' soccer team. IHSA thus argues that if Libby prevailed, it was against Romeoville, not IHSA, for it was the failure of Romeoville to establish a girls' soccer team which caused Libby's harm.[3] Defendants may also argue that even if the Magistrate did find an entitlement to relief on the merits, neither Judge Marshall nor this Court ever explicitly made such a finding, and that it may not be assumed that they relied on all of the Magistrate's reasoning when they issued the TRO's.

On behalf of Libby, it may be argued that the Magistrate, in her discussion of the merits, specifically found that IHSA had shown no justification whatsoever for its rule prohibiting girls from playing on boys' teams in tournaments in those instances where a school—for whatever reason, legal or not—did not have a girls' team. Although the Magistrate framed her inquiry in terms of whether there was "some likelihood" of success on the merits, her reasoning makes clear that she found a legal entitlement to relief. Libby may also argue that in the absence of any contrary indication by the judges who issued the TRO's, it must be assumed that they did so based on the reasoning contained in the Magistrate's reports.

The Court finds that the better arguments are those on behalf of IHSA. The Court never adopted the Magistrate's reasoning, and it explicitly stated, in granting the TRO against IHSA, that it was not ruling on the constitutional issue. The Court also found only that Libby had shown "some" likelihood of success on the merits. The Court is unable to conclude that Libby, in obtaining the TRO, obtained a favorable ruling on the merits. Libby's petition for attorneys' fees and costs pursuant to § 1988 is thereby denied. IHSA's motion for reimbursement from Romeoville

---

3. Indeed, IHSA has filed a motion for reimbursement from Romeoville for any fees which the Court finds Libby to be entitled to from IHSA.

is therefore moot and is accordingly denied as well.